IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | |
|---|---|
| PATRICIA SILVA, § | |
| § | |
| v. § | CIVIL ACTION NO. G-11-343 |
| § | |
| WAL-MART STORES, INC., § | |

## OPINION AND ORDER

Before the Court, with the consent of the parties, is Defendant Wal-Mart Stores of Texas, L.L.C.'s, improperly named as Wal-Mart Stores, Inc., Motion for Summary Judgment. (Docket Entry ("Dkt.") No. 31). Plaintiff Patricia Silva filed a response in opposition (Dkt. No. 39), to which Wal-Mart then filed a reply. (Dkt. No. 44). The Court, after carefully considering the Motion, the response and reply, the exhibits and the applicable law, concludes that Wal-Mart's Motion for Summary Judgment should be **DENIED**.

## I. BACKGROUND

This action was brought by Plaintiff Patricia Silva ("Silva") against Defendant Wal-Mart Stores of Texas, L.L.C. ("Wal-Mart") for false imprisonment. The facts in this case are not complex. On or about March 10, 2010, Silva went to the Wal-Mart in Galveston, Texas, to purchase some items she needed to take care of her grandfather. Accompanying Silva was Tiffany Pena. Soon after they entered the store, a woman, later identified as Wal-Mart's "asset-protection coordinator", Brandy Hodapp, began following them around the store as they shopped. This did not go unnoticed by either Silva or Pena. Although she acted as if she were addressing Silva, Pena responded to being followed by making loud disparaging remarks and curses that were actually directed at Hodapp. Eventually, it appears that Pena determined that she had enough and took all

of the items that she had collected, dumped them on the nearest shelf, and then left the store. Silva continued with her shopping. According to Silva, approximately 20 to 30 minutes later she proceeded to a register to pay for her items. Silva paid cash for her items and her receipt reflects that she checked out at approximately 10:45 p.m. As she proceeded toward the exit, Silva claims that she was "detained." Although the details surrounding her "detention" are in dispute, there appears to be no dispute that Silva was eventually released without any citations or charges.

Thereafter, Silva brought suit against Wal-Mart. In her amended complaint, which was filed on October 3, 2011, Silva alleges that Wal-Mart subjected her to an illegal detention and seeks damages as a result of the incident. After Wal-Mart's Motion to Dismiss was denied, Wal-Mart filed a Motion for Summary Judgment on March 5, 2012. (Dkt. No. 31). Silva filed a response opposing summary judgment supported by a number of exhibits. (Dkt. No. 39). Wal-Mart then filed a reply. Wal-Mart's Motion for Summary Judgment is now ripe for consideration.

## II. STANDARD OF REVIEW

The Court analyzes Wal-Mart's Motion under the well-established summary judgment standard. FED. R. CIV. P. 56(c); *see generally*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 576, 586-87 (1986); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 464 (5th Cir. 1999); *United States v. Arron*, 954 F.2d 249, 251 (5th Cir. 1992).

## III. DISCUSSION

Silva brings a claim against Wal-Mart for false imprisonment. To establish a cause of action in Texas for false imprisonment, a plaintiff must establish each of the following three elements: (1) that she was willfully detained by the defendant; (2) that the detention was without

her consent; and (3) the detention was without legal authority or justification. *Wal-Mart Stores v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002); *Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375-76 (Tex. 1985).

Wal-Mart, while not conceding the second or third elements, moves for summary judgment on the ground that Silva has not established the first element – that it wilfully detained her. Wal-Mart initially contends that Galveston police officers detained Silva and, since the officers are not its agents, liability cannot be imposed vicariously. Assuming such a narrow interpretation, the Court might agree, however, Texas law treats this element more broadly.

To establish the first element of a false imprisonment claim, Texas law permits a plaintiff to show that the defendant either unlawfully arrested or detained her, **_or_** that the defendant directed, requested or participated in her arrest or detention. *Grant v. Stop-N-Go Mkt., Inc.*, 994 S.W.2d 867, 872 (Tex.App.–Houston [1st Dist.] 1999, *no pet.*); *see generally*, RESTATEMENT (SECOND) OF TORTS § 45A cmt. c ("[i]n the case of an arrest, [instigation] is the equivalent, in words or conduct, of 'Officer, arrest that man!'"); 32 AM.JUR.2D FALSE IMPRISONMENT § 41 (1995) (to hold a third party liable for instigating the detention, then, "the act of arrest [must be] made by the officer, not of his or her own volition, but to carry out the request of the defendant."). Notwithstanding the broader interpretation, Wal-Mart maintains that liability cannot be imposed on it because Silva cannot establish that it directed, requested or participated in her detention. Instead, Wal-Mart insists that it merely contacted the police to report a crime and that this act is insufficient, as a matter of law, to impose liability. As urged by Wal-Mart, the law does provide that where a private citizen merely reports a crime and identifies the suspect to law enforcement authorities he has not requested or directed the suspect's arrest, and will not be liable

for instigating a subsequent false imprisonment. *See Smith v. Sneed*, 938 S.W.2d 181, 186 (Tex.App.-Austin 1997, *no pet.*); *Schnaufer v. Price*, 124 S.W.2d 940, 942 (Tex.Civ.App.-Texarkana 1939, *writ ref'd*); *Halbert v. City of Sherman*, 33 F.3d 526, 528 (5th Cir.1994); *Armstead v. Escobedo*, 488 F.2d 509, 511 (5th Cir.1974); *see also*, RESTATEMENT (SECOND) OF TORTS § 45A cmt. c ("[i]t is not enough for instigation that the actor has given information to the police about the commission of a crime, or has accused the other of committing it, so long as he leaves to the police the decision as to what shall be done about any arrest, without persuading or influencing them."). This is true even when the reporting party mistakenly identifies the wrong person. *See Schnaufer*, 124 S.W.2d at 942; *Sneed*, 938 S.W.2d at 186; *Halbert*, 33 F.3d at 528; *Armstead*, 488 F.2d at 511; *see also* RESTATEMENT (SECOND) OF TORTS § 45A cmt. c; 32 AM.JUR.2D FALSE IMPRISONMENT § 41; *Fowler v. Harper, et al.*, THE LAW OF TORTS § 4.11, at 4:121 (3d ed. 1996). However, in the present case, conflicting evidence exists concerning the facts surrounding the "detention" and the role that the Wal-Mart employee played in the situation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) (summary judgment disposition is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions). Essentially, the Wal-Mart employee stated that she merely called the police and did nothing more, whereas, Silva's account of the events reflects that the Wal-Mart employee was much more actively involved in the "detention."[1] To determine this

---

[1] For example, during her deposition, Hodapp made the following statements: (1) she merely called the police and did nothing more (Dkt. No. 40-3 (Hodapp deposition) at 15:6-10); (2) she saw the police talk to Silva (17:22-25) at the entrance by the Red Box movie rental machine (18:2-4); (3) she did not participate in the "detention" or the interviewing of Silva (17:19-21); and (4) Silva was never "detained" in a separate room. (18:5-7). Silva's account is very different. (Dkt. No. 40-1 (Silva deposition). In her deposition testimony, Silva made the following statements: (1) after Pena left, she remained in the store for another 25 to 30 minutes (24:6-8); (2) she went to the register and paid for the items (33-34) and

issue would require the Court to weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence. This is clearly not the function of the trial judge when ruling on a motion for summary judgment, but instead are functions best reserved for the trier of fact. *Id.*; *Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir. 1987) ("The Supreme Court has not, however, approved summary judgments that rest on credibility determinations … [and] the Court reminds district judges not to invade the role of the jury."). Accordingly, this Court is of the opinion that summary judgment is not appropriate.

## CONCLUSION

For all the reasons discussed herein, it is the **ORDER** of this Court that Wal-Mart's Motion for Summary Judgment (Dkt. No. 31) is **DENIED**.

**DONE** at Galveston, Texas, this _____15th_____ day of May, 2012.

John R. Froeschner
United States Magistrate Judge

---

proceeded toward the exit (35); (3) as she approached the exist, Hodapp, stopped her and said "Can you step over her for a minute" (35:2-4) and directed her to step into a back room (36:15-19); (4) after Silva asked why, Hodapp merely repeated her command to Silva (37:3-9); (5) two police officers approached and, according to Silva, Hodapp told the officers that she needed Silva to go into the interview room (35:22 - 36:4); (6) while Silva was in the room, the two police officers *and* Hodapp were present (38:13-21); (7) Hodapp stated that she followed Silva and Pena through the store, that Pena threatened her, and that she had telephoned the police (38:20-25); (8) after the police officer asked if Silva had her receipt, she produced it, and then Hodapp and one of the officers began riffling through her bags to compare the items in the bags with her receipt (39:16-19; 40:18 41:5); (9) she was in the room for approximately one hour (42:2), either some or all of that time she handcuffed (57:4-13) and Hodapp was present the entire time (44:16-19); (10) Silva was not charged with any offenses or given any citations (49:1-5); and (11) despite the fact that Hodapp and the officer found her receipt to be in order, Silva heard Hodapp ask the officer if he could get her for trespassing (61:9-12) and, after Silva scoffed at this suggestion, she then heard Hodapp tell the officer that if she couldn't "get her" for trespassing then she wanted to file charges against Pena for either threatening or harassing her. (61:14-19; 62:12 - 63:2).